*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1212**

State of Minnesota,
Respondent,

vs.

Antonyo Esquire Lundy,
Appellant.

**Filed July 6, 2026
Affirmed
Cochran, Judge**

Ramsey County District Court
File Nos. 62-CR-23-4301, 62-CR-22-7422

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Alexandra Meyer, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Bratvold, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this direct appeal from the final judgment of convictions for theft and failure to register as a predatory offender, appellant argues that he is entitled to withdraw his guilty pleas because his pleas are not constitutionally valid. We affirm.

**FACTS**

In December 2022, respondent State of Minnesota charged appellant Antonyo Esquire Lundy[1] with felony theft under Minnesota Statutes section 609.52, subdivision 2 (2022), in court file number 62-CR-22-7422. The complaint alleged that Lundy broke into two vehicles parked in a lot adjacent to a business and stole tools and other items from the vehicles. In July 2023, the state charged Lundy in a different court file, number 62-CR-23-4301, with violating the predatory-offender-registration statute by failing to register an address or change of information as required with the Minnesota Bureau of Criminal Apprehension in violation of Minnesota Statutes section 243.166, subdivision 5(a)(1) (2022).

Lundy entered into a plea agreement with the state to resolve both these and two other open case files. Under the terms of the agreement, Lundy agreed to plead guilty to felony theft in court file number 62-CR-22-7422, failing to register in court file number

---

[1] This appeal involves two district court files. Our case management system identifies Lundy as "Antonyo Esquire Lundy" in court file number 62-CR-23-4301, and "Antonyo Esquire Lundy, Jr." in court file number 62-CR-22-7422. Because it is unclear from our case management system which name is correct, we use the name from the 2023 case file— Antonyo Esquire Lundy.

62-CR-23-4301, and to the charges in the two other open court files.[2]  In exchange, the state agreed to dismiss the remaining felony charges in one of the other files.  The state and Lundy also agreed to the sentencing terms including concurrent sentencing, a mitigated dispositional departure with 365 days to serve at the workhouse, and restitution.

At the plea hearing, defense counsel presented the terms of the plea agreement. Defense counsel also urged the district court to grant Lundy conditional release based on credit for time served.  The district court asked Lundy if he understood the terms of the plea agreement, and if he wanted to give up his trial rights.  Lundy responded, "Yes."  The district court then asked Lundy, "[D]o you understand if you don't show up for sentencing, if you don't cooperate with the presentence investigation [(PSI)], if you do not remain law abiding, I'm going to keep your pleas and I'm going to likely give you more jail time or even prison time?"  Lundy said, "Okay."  The district court asked, "You understand that?" Lundy responded, "Yes."  The district court reiterated, "[Y]ou need to understand that if you don't do well, all bets are off in terms of disposition.  Understood?"  Lundy repeated, "Yes."

Lundy then pleaded guilty to theft, violating the predatory-offender statute, and the charges in the two other open case files pursuant to the terms of the plea agreement.  He confirmed that he reviewed the plea petition with his attorney "line by line" and that his attorney answered his questions.  Defense counsel tendered the plea petitions, without objection from the state, and Lundy provided a factual basis for his pleas after confirming

---

[2] The other offenses in the other two open court files are not at issue on appeal.

he understood the rights he was giving up by pleading guilty. He also agreed that no person was forcing him to plead guilty. After continuing the matters for sentencing, the district court released Lundy from jail on his own recognizance and instructed him to contact the probation department within 48 hours to participate in a PSI prior to sentencing.

The district court held a sentencing hearing in January 2025. Lundy failed to appear, and the district court issued a warrant for his arrest. The district court also noted that the PSI was not completed as required.

Lundy was later arrested on the bench warrant and appeared in court for a sentencing hearing in April 2025. The district court received the PSI report by the time of the hearing. The district court adjudicated Lundy guilty of the offenses to which he pleaded guilty. As the district court was announcing concurrent prison sentences for the offenses, Lundy interrupted the judge to state that he believed the plea agreement contemplated probation rather than jail time. The district court responded, "There was an agreement for a departure, but you did not comply with your requirements, because my understanding is that you may have picked up a new file, . . . which violates the plea agreement." The district court continued the hearing to give Lundy time to speak with his attorney about whether he wanted to withdraw his guilty pleas.

Lundy appeared in court about a month later for the rescheduled sentencing hearing. Defense counsel indicated that Lundy did not want to withdraw his pleas. Lundy moved for a downward dispositional departure in his pending case files, arguing that he was particularly amenable to probation and treatment. The district court denied Lundy's motion for a downward dispositional departure to probation. Instead, the district court sentenced

4

Lundy to 25 months in prison on the predatory-offender charge (file 62-CR-23-4301) and a stayed sentence of 19 months in prison on the felony theft charge (file 62-CR-22-7422).

Lundy appeals.

## DECISION

"An appellant may challenge a guilty plea's validity in the first instance on direct appeal." *State v. Lawrence*, 982 N.W.2d 772, 775 (Minn. App. 2022). If we determine that a defendant's plea agreement has been violated, we "may allow withdrawal of the plea, order specific performance, or alter the sentence if appropriate." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). But a defendant does not have an absolute right to withdraw a guilty plea. *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016).

Lundy argues that his guilty pleas were not intelligent or voluntary and seeks to withdraw his pleas on that basis. To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. *Brown*, 606 N.W.2d at 674. The validity of a guilty plea is a question of law that appellate courts review de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The defendant bears the burden of demonstrating that a plea is invalid. *Id.* If a defendant entered an invalid guilty plea, we will reverse and remand to the district court to allow the defendant to withdraw their guilty plea. *State v. Davenport*, 948 N.W.2d 176, 180-81 (Minn. App. 2020).

*Intelligence Requirement*

Lundy first argues that his guilty pleas were not intelligent because the district court added conditions to the pleas that were not presented by the parties as part of the plea agreement. The state responds that Lundy's pleas were intelligent because he understood

5

the charges against him, the rights he was giving up, and the agreement he was making. We agree with the state.

The intelligence requirement ensures that the defendant understands the state's charges against him, the rights being waived, and the consequences of the plea. *Raleigh*, 778 N.W.2d at 96. The defendant must understand the plea's "direct consequences." *Id.* "Direct consequences are those which flow definitely, immediately, and automatically from the guilty plea, such as the maximum sentence to be imposed . . . ." *State v. Crump*, 826 N.W.2d 838, 841-42 (Minn. App. 2013) (quotation omitted), *rev. denied* (Minn. May 21, 2013).

Lundy contends that the district court rendered his guilty pleas unintelligent by adding terms to the plea agreement. A district court "must not participate in plea negotiations." Minn. R. Crim. P. 15.04, subd. 3(1). When a judge becomes involved in the plea-bargaining process, there is an inherent risk that the defendant will feel pressured to plead guilty. *Wheeler v. State*, 909 N.W.2d 558, 567-68 (Minn. 2018). However, a district court may inquire about the status of negotiations, share general sentencing practices, or provide information without becoming improperly entangled in the plea-bargaining process. *Id.* at 565.

Here, Lundy claims his pleas were not intelligent because the district court "refused to honor the plea agreement" by imposing a prison sentence. Lundy asserts that the plea agreement with the state anticipated that Lundy would receive concurrent sentences, a mitigated dispositional departure with a year in the workhouse, and restitution. Lundy contends that the district court added new conditions to the plea agreement by telling him

that: "[I]f you don't show up for sentencing, if you don't cooperate with the presentence investigation, if you do not remain law abiding, I'm going to keep your pleas and I'm going to likely give you more jail time or even prison time."  The state argues in response that the district court did not participate in the plea negotiation because the district court was explaining the conditions of Lundy's release between the plea hearing and the sentencing hearing.

When viewed in context, we are satisfied that the district court's statement did not amount to an impermissible intrusion into the plea-negotiation process.  Rather, the district court was imposing conditions on Lundy's release from jail pending the sentencing hearing, after Lundy pleaded guilty.  At the hearing, defense counsel asked the district court to grant Lundy conditional release from custody pending the sentencing hearing.  The district court then discussed the conditions of release and advised Lundy that if he did not show up for sentencing, cooperate with the PSI, or remain law abiding, the district court would likely impose more jail time or a prison sentence.  The criminal rules of procedure grant district courts the authority to impose release conditions.  *See, e.g.*, Minn. R. Crim. P. 6.02 (permitting a district court to set conditions of release prior to trial); 19.05 (allowing a district court to set or modify conditions of release at an initial-appearance hearing); 27.01 (providing that after conviction but before sentencing, a district court may "continue or alter the terms of release, or the court may confine the defendant").  It is clear, in context, that the conditions Lundy challenges on appeal—appearing for sentencing, cooperating with the PSI, and remaining law abiding—related to Lundy's release from custody and not to the underlying terms of the plea agreement itself.

7

When reviewing a plea agreement and its conditions, we look at what the parties reasonably understood to be the terms of their agreement. *State v. Wukawitz*, 662 N.W.2d 517, 527 (Minn. 2003). Here, the record supports the conclusion that Lundy understood the conditional-release terms imposed by the district court. Lundy agreed to plead guilty, and the state agreed to dismiss the remaining charges. At the plea hearing, the district court asked Lundy numerous times if he understood that the district court would impose more jail time or a prison sentence if Lundy failed to abide by the terms of his conditional release. Lundy indicated each time that he understood. Lundy acknowledged he went through the plea agreement "line by line" with his attorney, that his attorney answered his questions, and that he was thinking clearly. Lundy confirmed he wished to plead guilty. The district court went over Lundy's rights with him and asked if he understood that he was waiving those rights by entering the guilty pleas. Lundy indicated he understood he was waiving those rights.

Based on our review of all the relevant circumstances surrounding the pleas, we conclude that the district court did not impermissibly intrude into the plea-negotiation process but was instead discussing a condition of release. The district court was authorized to impose conditions of release, independent of the plea agreement that Lundy had with the state. Moreover, the record shows that Lundy acknowledged that he understood the terms of the plea agreement, understood he was waiving certain rights by pleading guilty, and wanted to proceed with the plea hearing. Accordingly, the record reflects that Lundy's guilty pleas were made intelligently.

*Voluntary Requirement*

Lundy next asserts that his pleas were not voluntary because he did not receive probation, as contemplated by the plea agreement. The state argues that Lundy's pleas were voluntary because the promise of probation was conditioned on Lundy's pre-sentencing behavior. We again agree with the state.

"The voluntariness requirement ensures a defendant is not pleading guilty due to improper pressure or coercion." *Raleigh*, 778 N.W.2d at 96. Improper pressure or coercion generally comes from an external source, such as a threat or promise made to induce a defendant to plead guilty. *Nelson v. State*, 880 N.W.2d 852, 861 (Minn. 2016). Whether a plea is voluntary is determined by considering all of the relevant circumstances. *State v. Ecker*, 524 N.W.2d 712, 718-19 (Minn. 1994); *see also Raleigh*, 778 N.W.2d at 96 (instructing courts to examine what the parties understood to be the terms of the plea agreement).

Lundy contends that his guilty pleas were involuntary because the pleas were induced by the state's unfulfilled promise that he would receive probation, a year in the workhouse, and restitution. Lundy argues that he did not receive the benefit of his plea bargain because the district court imposed a prison sentence rather than placing him on probation. We are not persuaded by these arguments.

As explained above, the district court sentenced Lundy to prison because he failed to comply with the conditions of release prior to sentencing. These conditions included appearing for the sentencing hearing, cooperating with the PSI, and remaining law abiding. The district court explained these conditions to Lundy at the plea hearing and advised

Lundy that if he violated those conditions, the district court was "likely [to] give [him] more jail time or even prison time." Lundy acknowledged that he understood. The district court again asked, "You understand that?" Lundy said, "Yes." The district court said, "[Y]ou need to understand that if you don't do well, all bets are off in terms of disposition. Understood?" Lundy confirmed, "Yes." Given the record before us, there is no basis to conclude that Lundy pleaded guilty due to improper pressure or coercion. Lundy received jail time because he failed to comply with the district court's conditions of release, not because the state induced him to enter the plea agreement based on an unfulfilled promise. We therefore conclude that Lundy's pleas were made voluntarily.

In sum, Lundy has not met his burden to show he is entitled to withdraw his guilty pleas.

**Affirmed.**